**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**BLACK KNIGHT, INC.,**

    Plaintiffs,

Case No._____

vs.

**PENNYMAC LOAN SERVICES, LLC**,

    Defendants.

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT**
**(Injunctive Relief Sought)**

Plaintiff, BLACK KNIGHT, INC. ("BKI"), sues Defendant, PENNYMAC LOAN SERVICES, LLC ("PennyMac") and alleges:

1. This is an action for declaratory judgment and wrongful arbitration in accordance with 28 U.S.C. § 2201 and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA").

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367, as this Complaint is predicated on an action that arises under federal law, and on related state law claims that arise from a common nucleus of operative facts with the federal claims and form part of the same case or controversy under Article III of the U.S. Constitution. BKI seeks resolution in this action of an actual pending controversy between the parties as to whether PennyMac waived its right to arbitrate federal antitrust and related state law claims against BKI by previously filing and litigating those arbitrable claims in a court of law. This

Court has original jurisdiction over those underlying claims, and, as discussed below, they were previously filed in federal court and were in fact pending in this Court.

3.     BKI is a Delaware corporation with its principal place of business at 601 Riverside Avenue, Jacksonville, Florida 32204.

4.     PennyMac is a Delaware limited liability company with its principal place of business at 3043 Townsgate Road, Suite 200, Westlake Village, California 91361.

5.     This Court has personal jurisdiction over PennyMac (a) under Sections 48.193(1)(a)(9), 685.101, and 685.102, Florida Statutes, because this suit relates to a contract executed by PennyMac that calls for application of Florida law and pursuant to which PennyMac submitted to the jurisdiction of Florida courts; (b) under Section 48.193(1)(a)(1), Florida Statutes, because PennyMac is operating, conducting, engaging in, or carrying on a business or business venture in Florida and has an office or agency in Florida; and (c) under Section 48.193(2), Florida Statutes, because PennyMac is engaged in substantial and not isolated activity within Florida.

6.     Venue is proper in this Court because this suit is based upon a contract that calls for venue in any court of this state.  In addition, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this district and under 28 U.S.C. § 1391(b)(3) because PennyMac is subject to the personal jurisdiction of this Court.

7.     In addition, personal jurisdiction and venue are proper because (a) the prior lawsuit brought by PennyMac asserting arbitrable claims was transferred to and pending in this district before PennyMac dismissed it and (b) PennyMac has requested a Jacksonville,

Florida, hearing locale for the arbitration it improperly commenced and which is the subject of this action.

8. Black Knight Servicing Technologies, LLC ("BKST"), is in the business of providing electronic mortgage services and software to the mortgage servicing industry. BKI is BKST's ultimate parent.

9. PennyMac is a residential mortgage servicer and lender who became a registered user of BKST's proprietary MSP® System pursuant to a Master Agreement entered April 30, 2008, between BKST's predecessor-in-interest, Fidelity Information Services, Inc., and PennyMac, together with certain addenda thereto (the "Master Agreement").

10. The Master Agreement, at Section 18.1, contains an informal dispute resolution provision requiring the parties to "attempt to resolve all … conflicts as promptly as possible and in good faith before initiating any causes of action arising out of this Agreement." A copy of the Master Agreement is attached hereto as Exhibit "A." Section 18.2 provides a procedure for "[e]scalation of unresolved disputes."

11. In the event that a controversy arising under the Master Agreement is not resolved under Sections 18.1 and 18.2, the Master Agreement offers two options: (1) Section 32 provides that an action may be "brought in a federal or state court of competent jurisdiction in Florida"; or, (2) alternatively, under Section 18.3 "such *controversy and any ancillary claims* . . . shall be submitted to binding arbitration *at the election of either party*." (Emphasis added.)

12. On November 6, 2019, PennyMac filed a complaint against BKI and ten "John Doe" defendants in U.S. District Court, Central District of California, Case No. 2:19-cv-9526

(the "PennyMac Lawsuit"), alleging that the contractual restrictions and pricing terms for use of the MSP® System violate federal and California antitrust statutes and constitute unfair competition under California common law. The complaint filed in the PennyMac Lawsuit is attached hereto as Exhibit "B." That complaint failed to comply with the venue provision and also reflected PennyMac's election not to arbitrate its claims but, instead, to litigate them in federal court.

13. While PennyMac avoided mention of the Master Agreement or BKST in the PennyMac Lawsuit in federal court in California, the contractual restrictions and pricing terms about which it complained are those stated *in the Master Agreement*. Further, PennyMac referred to itself as a "customer" and referenced correspondence with BKST by which it notified BKST it would not renew its MSP® System license. PennyMac's claims arose under the Master Agreement.

14. On January 2, 2020, with neither party having invoked its right to arbitrate, BKI moved to transfer the PennyMac Lawsuit to the U.S. District Court, Middle District of Florida, Jacksonville Division, pursuant to the venue provision contained in Section 32 of the Master Agreement.

15. PennyMac, however, continued to pursue its antitrust claims arising from the Master Agreement in California federal court, including opposing BKI's motion to transfer on the grounds that BKI was a non-signatory to the Master Agreement and that the claims did not arise under the Master Agreement, as well as opposing BKI's motion to dismiss.

16. On February 13, 2020, the California federal court in the PennyMac Lawsuit granted BKI's motion to transfer, concluding that (1) the PennyMac Lawsuit was "based on"

the Master Agreement and (2) BKI could enforce the terms of the Master Agreement because PennyMac would not have claims against BKI "but for" the Master Agreement. A copy of the order is attached hereto as Exhibit "C." The PennyMac Lawsuit was transferred to the U.S. District Court, Middle District of Florida, Jacksonville Division, Case No. 3:20-cv-148.

17. A copy of the docket sheet from the PennyMac Lawsuit is attached hereto as Exhibit "D." The docket sheet reflects some of the litigation activity that occurred in the PennyMac Lawsuit in the period of more than five months during which PennyMac litigated its claims in federal court. By way of example, in addition to the substantial motion practice directed to venue and the merits of the claims, the parties respectively applied and paid to have multiple attorneys admitted *pro hac vice* first in California and subsequently in Florida federal court, participated in scheduling issues, and filed other motions.

18. On April 17, 2020, PennyMac filed a notice of voluntary dismissal without prejudice of the PennyMac Lawsuit. Despite having already submitted its claims to a court of law, having taken the position its claims did not arise under the Master Agreement, and having litigated over both the merits and the proper federal court venue, PennyMac stated therein that "PennyMac is dismissing this action without prejudice for efficiency purposes and will bring the claims raised here . . . in arbitration."

19. Then, on April 28, 2020, PennyMac initiated an arbitration (the "Arbitration") with the American Arbitration Association ("AAA"), in the form of a cover letter and demand for arbitration, purporting to commence arbitration of the claims raised in the PennyMac Lawsuit as well as claims asserted against PennyMac by BKST for

5

misappropriation of trade secrets (the "BKST Lawsuit").[1]  A copy of PennyMac's demand for arbitration was attached thereto as Exhibit 1, and a copy of the complaint in the PennyMac Lawsuit was attached as Exhibit 5.  BKI and BKST were identified as respondents to the purported arbitration, and the complaints filed in the BKST Lawsuit and the PennyMac Lawsuit were attached as exhibits.  A copy of the cover letter, together with the Demand for Arbitration and other exhibits thereto, is attached hereto as Exhibit "E."

20. In short, after almost 6 months of litigation, PennyMac purported to make the election to arbitrate under Section 18.3 that it was required to make, if at all, before bringing its claims in federal court.

21. Thereafter, on May 13, 2020, PennyMac filed its Amended Demand for Arbitration, a copy of which is attached hereto as Exhibit "F."[2]  In its Amended Demand for Arbitration, PennyMac is denominated "Claimant and Counter-Respondent" and BKST and BKI are denominated "Counter-Claimant and Respondent." The Amended Demand continues to assert against BKI the same claims previously brought in the PennyMac Lawsuit along with additional Florida state-law claims alleging a common nucleus of operative facts.

22. PennyMac's attempt to arbitrate its claims is inconsistent with its previous strategic decision to file and litigate these very claims in a court of law on the other side of

---

[1] BKST's claim against PennyMac for misappropriation of its trade secrets was initially filed in the Circuit Court, in and for Duval County, Florida.  On April 6, 2020, that court entered an Order Granting Motion to Compel Arbitration, which is currently on appeal.

[2] Although PennyMac initiated the arbitration and is consequently listed in the pleadings as the Claimant, and although PennyMac is being sued by BKST but has brought its own claims against BKI, it titles its claims against BKI in the Amended Demand for Arbitration as "Counterclaims."

the country.  When PennyMac could not get the venue of its choice—ignoring the provisions of the very agreement governing this controversy—it elected to drop its case completely from federal court and try something else by demanding arbitration.  The law does not permit PennyMac to forum shop in such a manner.  PennyMac waived the right to arbitrate its claims.

23.   BKI bases its position in part on the following: (a) when PennyMac commenced the PennyMac Lawsuit, it knew or at the very least had constructive knowledge of its right to arbitrate claims arising under the Master Agreement; (b) the claims raised in the PennyMac Lawsuit arose under the Master Agreement; (c) PennyMac acted inconsistently with its right to arbitrate these claims by filing the PennyMac Lawsuit in a court of law and litigating its claims for 5½ months; (d) in filing and litigating the PennyMac Lawsuit, PennyMac substantially invoked the litigation machinery of the federal courts during an intense period of litigation with respect to, *inter alia*, the proper federal court venue and the merits; (e) PennyMac changed course after, among other case activity, losing its bid to stay in its hometown California court; and (f) BKI was prejudiced by PennyMac's actions, in the form of, *inter alia*, the significant legal expenses incurred and PennyMac's 5½ month delay in pursuing arbitration.

24.   PennyMac has taken the contrary position that it may now arbitrate the same claims it previously raised in the PennyMac Lawsuit, and that it did not waive that arbitration right by previously filing those claims in a court of law, instead of electing to arbitrate the controversy and filing its claims in arbitration.

25. The Arbitration, assigned AAA Case No. 01-20-0005-0778, consisting of PennyMac's claims, as well as claims asserted against PennyMac by BKST in the BKST Lawsuit for misappropriation of trade secrets, is proceeding.

26. BKI has asserted as a defense in the Arbitration that PennyMac waived the right to arbitrate its claims. PennyMac has taken the position in that action that the determination as to whether PennyMac waived the right to arbitrate its claims is for the court.

27. There is a real and substantial controversy currently pending between the parties hereto, and those parties have adverse legal interests. The subject of the controversy is definite and concrete. As the arbitration of PennyMac's subject antitrust claims is ongoing, those adverse interests are of sufficient immediacy and reality to warrant the issuance of a declaratory decree by this Court. The parties agree that a court may resolve the dispute.

28. BKI has no adequate remedy of law and will suffer irreparable injury if the arbitration of PennyMac's claims is permitted to proceed despite PennyMac's conduct inconsistent with, and constituting a waiver of, the right to arbitrate those claims.

WHEREFORE, BKI requests that the Court (1) enter a declaratory judgment finding that PennyMac waived the right to arbitrate the claims it is pursuing in arbitration, (2) enter an order permanently enjoining arbitration of such claims, (3) award it the costs of this action**,** and (4) grant such other and further relief as the Court deems appropriate.

**ROGERS TOWERS, P.A.**

By */s/ A. Graham Allen*
A. GRAHAM ALLEN
Florida Bar No.  117110
E. CARSON LANGE
Florida Bar No. 91512
SAMUEL J. HOROVITZ
Florida Bar No. 59015
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida  32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)

Attorneys for Black Knight Servicing Technologies, LLC

Primary email: gallen@rtlaw.com
Secondary email: emccarthy@rtlaw.com
Secondary email: clange@rtlaw.com

9